UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| WALTER T. GIPSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 15-336-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Walter T. Gipson ("Gipson" or "the plaintiff") [Record No. 12] and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner") [Record No. 13]. Gipson argues that the Administrative Law Judge ("ALJ") erred in determining that he is not entitled to disability insurance benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Gipson.

**I.**

On August 28, 2012, Gipson filed a Title II application for a period of disability and disability insurance benefits. [Administrative Transcript, "Tr.," p. 186] He alleged a disability beginning on June 20, 2009, but later amended his alleged onset date to January 26, 2011. *Id.* at pp. 186, 34. Gipson, along with attorney Mark Morgan and vocational expert ("VE") Tina

Stambaugh, appeared before ALJ Bonnie Kittinger on December 23, 2013, for an administrative hearing. *Id.* at 31. ALJ Kittinger issued a written opinion on March 7, 2014, in which she determined that Gipson was not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). *Id.* at 27. Gipson appealed that decision to the Social Security Administration's ("SSA") Appeals Council. *Id.* at 15. However, the Appeals Council declined the plaintiff's request for review. *Id.* at 1.

Gipson was 44 years-old when his alleged disability began, and 49 years-old at the time of the ALJ's decision. *Id.* at pp. 25, 34. He completed high school and previously worked as an automobile mechanic. *Id.* at 37. Gipson had operated his own auto garage for several year. However, at the time of the administrative hearing, Gipson's son was running the garage due to Gipson's health problems. *Id.* After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Gipson suffered from the following severe impairments: hypertensive cardiovascular disease; essential hypertension; and diabetes mellitus. *Id.* at 21. Notwithstanding these impairments, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching and crawling; he should never climb ladders, ropes or scaffolds; and he should avoid concentrated exposure to hot and cold temperature extremes, humidity, vibration, and hazards such as dangerous machinery and unprotected heights. He should be allowed to alternate sitting and standing at thirty (30) to forty-five (45) minute intervals.

*Id.* at 22.

After considering Gipson's age, education, work experience, and RFC, ALJ Kittinger concluded that he could perform a significant number of jobs in the national economy,

including trimmer cutter, packer, and inspector. *Id.* at 26. As a result, the ALJ determined that Gipson was not disabled from January 26, 2011, through March 31, 2011, the date last insured. *Id.* at 27.

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's

residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if an ALJ's decision is supported by substantial evidence, the decision will not be upheld if the Commissioner failed to follow its own regulations and the error prejudiced the claimant on the merits or denied the claimant of a substantial right. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.

The plaintiff complains that the ALJ erred at the second step of her analysis by failing to consider all of his severe impairments. [Record No. 12-1, p. 3] Although the ALJ found that his hypertensive cardiovascular disease, essential hypertension, and diabetes mellitus were

-4-

severe, Gipson contends that the ALJ should have determined that the following impairments also were severe: obesity, lumbar pain and radiculopathy, pitting edema, diabetic neuropathy, and obstructive sleep apnea. *Id.* Additionally, Gipson contends that the ALJ failed to consider that each of his impairments was exacerbated by his obesity. *Id.* As an initial matter, any error based solely on the failure to characterize an impairment as severe was harmless. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (unpublished opinion). As long as a claimant has one severe impairment, the ALJ proceeds to the next step of the analysis. *See id.* When assessing how much work an individual can do, the ALJ must consider all limitations imposed by the individual's impairments, including those impairments that are non-severe. *Id.*

Gipson contends that the ALJ did not consider each of his impairments in combination with his obesity as required by SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Although obesity is no longer a listing under the Listing of Impairments in 20 C.F.R., subpart P, appendix 1, it is still a medically determinable impairment and, thus, adjudicators must consider its effects when evaluating disability. *Id.* at *1. Because the effects of obesity may exacerbate the effects of other impairments, adjudicators are instructed to consider them in combination. *Id*.

Records of Central Baptist Hospital indicate that, on January 26, 2011, Gipson was six feet, one inch tall and weighed 397 pounds, with a BMI of 51. [Tr. p. 246] A BMI of 40 or greater is known as Level III, or "extreme" obesity and represents the greatest risk for developing obesity-related impairments. SSR 02-1p, 2002 WL 34686281, at *2. Although obesity on its own may be considered a severe impairment, there is no specific weight or BMI that equates with a severe impairment. *Id.* at *4. Rather, disability adjudicators must perform

an individualized assessment of the claimant's functioning to determine whether any impairments are severe. *Id.*

Social Security Ruling 02-1p does not offer any particular mode of analysis for obesity. *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006). Rather, the ruling directs ALJs to consider the claimant's obesity throughout the sequential evaluation. *Shiloh v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015). ALJs are required to take into account "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," and consider how "fatigue may affect the individual's physical and mental ability to sustain work activity." *Id.* at *6.

Here, the ALJ acknowledged Gipson's obesity, noting that, in March 2012, he had a BMI of 49.36. [Tr. p. 24] She also relied upon the opinions of state examiners Drs. Paul Saranga and Carlos Hernandez who diagnosed Gipson as morbidly obese. *Id.* at pp. 71, 83. Despite Gipson's excessive BMI, both consulting physicians opined that Gipson could bend at the waist, kneel, crouch, and crawl frequently. *Id.* at 70–71, 82. Both physicians relied on the medical evidence of record, as well as Gipson's work history and pain questionnaire, and believed a consultative examination was not needed. *Id.* at pp. 66–68, 80–81.

Generally, an ALJ is required to consider a claimant's obesity in combination with other impairments at all stages of the sequential evaluation. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (unpublished opinion) (citing *Bledsoe*, 165 F. App'x at 411–12). However, SSR 02-1p provides that any findings regarding the effects of obesity must be based on evidence in the record.[1] ALJs may not make assumptions about the severity of or

---

[1] Sections 416.912 and 416.913(d) of the Regulations specify that the claimant bears the burden of providing a complete record.

functional effects of obesity combined with other impairments. *Id.* at *6. Notably, the plaintiff has not identified any evidence indicating that his obesity contributed to his functional limitations. The medical record is silent regarding whether and how Gipson's obesity might have exacerbated his impairments. Directing the ALJ to make findings in this regard would require her to render a medical opinion, which is not permitted. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (unpublished opinion).

The Court notes that the ALJ failed to explicitly discuss Gipson's sleep apnea diagnosis. She did comment that he slept with a CPAP and fell asleep during the day if he sat still, which he testified to during his hearing. [Tr. p. 41] He also testified that his somnolence was caused by some of his medications, *id.*, but that if he kept moving, he was able to remain alert. *Id.* at 44. While SSR 02-1p cautions that obesity may increase the risk of sleep apnea, Gipson's record contains no medical evidence indicating that his sleep apnea was caused by obesity or that obesity was an exacerbating factor.

Finally, Gipson complains that the ALJ failed to consider evidence of a lumbar MRI that was performed on March 17, 2012. [Record No. 12–1, p. 6] This MRI was performed approximately one year after the date last insured and, thus, would not necessarily relate back to the relevant time period. *See e.g.*, *Arvin v. Astrue*, No. 07-115, 2008 WL 375217, at *5 (E.D. Ky. Feb. 8, 2008). Likewise, a treatment note from Dr. Khursheed Siddiqui dated May 24, 2013, was untimely. [Tr. p. 337] The ALJ did not err in assigning this evidence little weight.

### IV.

Substantial evidence supports the determination of the Social Security Administration regarding Plaintiff Gipson's claimed disability. Accordingly, it is hereby

-8-

**ORDERED** as follows:

1. Plaintiff Walter T. Gipson's Motion for Summary Judgment [Record No. 12] is **DENIED.**

2. Defendant Carolyn W. Colvin's for Summary Judgment [Record No. 13] is **GRANTED.**

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 22nd day of August, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge